The opinion of the Court was now delivered by
Parker, C. J.
The question proper to be first settled by us is, whether the written memorandum, which was received in evidence, ought to have been admitted, and also the facts relating to it, which might have been proved by the testimony of the broker. Indeed, there seems to be no reason why the latter should have been rejected, if the former was admitted ; both being parol evidence, and neither of them making a part of the contract which was finally agreed to by the parties. (4) And we are all of opinion, that it ought not to have been admitted, for the purpose for which it was offered ; which was, to show that the policy was void in consequence of the insurance made by the plaintiff abroad. Although policies of insurance are not technically specialties, not being under seal, they have nevertheless ever been deemed instruments of a solemn nature, and subject to most of the rules of evidence which govern in the case of specialties. The policy itself is considered to be the contract between the parties ; and whatever proposals are made, or conversa lions had, between the parties, prior to the subscription, they are to be considered as waived, if not inserted in the policy, or contained n a memorandum annexed to it.
*85 * Representations, however, of the state of the vessel, and giving a description of the voyage, may be proved by oral or written testimony, when the object is to falsify those representations ; for many things material to the risk are stated in the application for insurance, which are not usually made a part of the policy; and it is a part of the law of insurance, that such representations may be so proved. Warranties, however, must always be inserted in the policy, as also any agreements as to the policy being vacated on the happening of any event agreed on by the parties.
The paper admitted in evidence was in some respects a repre sentation ; but it was not intended at the trial to falsify it in that respect. The sole object for which it was introduced was, to avoid the policy on account of an event specified in the paper. It was, in fact, to make the policy conditional, when by its terms it was absolute ; which would, in effect, be annulling and destroying the contract by extrinsic matter proved by parol, and thus defeating the intention of the parties, as expressed in the instrument made to carry that intention into effect. However probable it may be, in the present case, that the written memorandum was looked to by insurer and insured as the grounds of their contract, it would tend to great uncertainty and inconvenience to depart from the known rules, in cases of such universal influence.
Whether the construction given to the memorandum by the judge at the trial was correct or not is not a question of importance. But it may not be amiss to say, that he himself thinks it was not correct, and that, had the words used made a part of the policy, he is- W'ell satisfied that the fact of insurance having been made abroad by the plaintiff would, within the meaning of the parties, have rendered this policy inoperative ; the object of the agent having manifestly been to secure something for his friend abroad, upon the supposition of bis being unable to procure insurance there ; but not intending to bind him, if he had exercised his judgment on the subject himself.
* We must, then, consider the case as depending altogether upon the terms of the policy, independent of any stipulation of the parties not contained in it.
The first objection to the plaintiff’s recovering was, that he had not an insurable interest, in consequence of the conveyance of the ship by way of mortgage. But this objection was not much insisted on, because of the uncertainty of some of the evidence, whether the mortgage was subsisting or not at the time of making the policy We are satisfied, however, that, if it were subsisting, it left an insurable interest in the plaintiff; even if the ship were mortgaged to her full value ; for it has been settled by many decisions, that different par *86 ties, having different interests in the same subject matter, may severally cause insurance upon it. (5)
Whether, in such case, the insured ought to insure his interest only in the ship, or may insure the ship itself, does not appear to have been definitively settled. But, if the interest need not be stated in the policy, it would seem, nevertheless, that the assured could never proceed against the underwriter for a total loss, in cases where abandonment would be necessary to constitute such loss ; because, by his own act, transferring the title and the possession of the ship, no abandonment could be effectually made of the subject matter of the insurance.
Passing over, therefore, this question, as unnecessary to be settled in this action, no objection on this ground having been suggested at the trial; we come to the main question in the cause, namely, What effect the policy on the ship made at Calcutta, subsequent in date to the one under consideration, together with the abandonment made to the underwriters there, and the payment of a total loss, before the offer to abandon here, had upon this contract.
The policy, upon which the abandonment took place, was valued ; and the estimated value of the ship was much less than the evidence used at the trial proved her to be worth. The policy, upon which this action is brought, is * an open policy ; so that .the estimate of value, made on the foreign policy, is not binding upon either of the parties to this. If the capture had continued, so that an absolute total loss had taken place, or if an offer to abandon had been made here during the capture, or after the recapture because the voyage had been broken up, the insured having it in his power to abandon, the underwriter here would have been liable for a proportion, according to his subscription, of the value of the vessel as proved here, without regard to the valuation abroad, any further than as it might be considered as evidence, not conclusive, of the actual value of the ship.
But, in order to make the underwriters here liable for a total loss, which can be constructive only, the ship being entire and under the control of the assured after the recapture, subject only to the legal salvage claimed by the recaptors, an offer to abandon was necessary; and that offer should be made under circumstances which would give the insurer a legal title, with the right of possession of the ship ; otherwise the offer would be merely formal, and give no advantage whatever to the insurer.
Now the effect of the valuation of the ship abroad was, to fix the price at which the underwriters should become her legal owners, in. case of a claim for a total loss upon abandonment; and thus to de *87 prive the insured of all power to convey any interest in the ship to the underwriter here ; so that the offer to abandon was merely formal and nugatory, and cannot entitle him to recover for a total loss. In truth it is the same as if. the plaintiff, after the capture and recapture of his ship, had thought fit, not from necessity, to sell her ; in which case he could claim nothing of underwriters, but an indemnity for her diminished value in consequence of the peril insured against.
1 We are, therefore, satisfied that the plaintiff is not, in this case, entitled to recover as for a total loss, for want of an abandonment, which could not have been made after he had voluntarily parted with all title to his ship.
* He is confined, therefore, to a mere indemnity for the actual loss sustained upon his ship; which the defendant must be held to pay, in the proportion that his subscription bears to the value of the ship as proved here. For, although it is not easy to account for her being abandoned upon an assurance amounting to lit tie more than half her value according to the present pretensions, we think the plaintiff would not be permitted to return to the estimated value in Calcutta, in order to enhance the defendant’s liability.
What, then, is the actual loss sustained ? We think the salvage paid to the recaptors cannot be taken into the account; because it was not paid by the plaintiff, and was therefore no loss to him. It is the same, as it respects his interest, as if the recaptors had redelivered his ship to him without demanding any salvage.
But still there is something upon which the defendant is liable for his insurance on the ship. It was in evidence that she was injured, either by the neglect of the captors or recaptors, or by common sea perils. For one of her masts and topmasts was gone, and she was also injured by worms while lying in the port into which she was carried upon her recapture. Now, although the plaintiff has received the full price of her, as she was valued in his Calcutta policy ; yet these injuries may have been, in some measure, the causes which induced the plaintiff to part with his property in the ship, instead of proceeding there for a partial loss. For these injuries, whatever may be the amount, we consider the defendant liable, in the proportion of the sum by him subscribed to the full value of the ship, and no more.
He is answerable also for a total loss on the freight ; because thav was necessarily an absolute total loss ; and there appears to have Deen sufficient for all the policies, both in Calcutta and here.
If the plaintiff, on the consideration of the trifling sum he will probably obtain for the loss on the ship, according * to these principles, is willing to relinquish his claim on that account; the verdict may stand for the freight alone, and judgment may be now entered upon the verdict. Otherwise *88 assessors must be appointed, to ascertain the amount of partial loss on the ship.
By assent of the plaintiff, the Court ordered

Judgment on the verdict.

[ Gordon vs. Mass F. & M. Ins. Co., 2 Pick. 249 ; 2 Phil. on Insur. 40; 10 Pick. 40 9 Wend. 404. — Ed.]

 Marsh. 608.

 Marsh. 81. — 2 D. & E. 188. —1 Burr 489. —1 Johns. 385.