Parker C. J.
delivered the opinion of the Court. Two principal questions have been raised in support of the motion for a new trial, both of which are attended with some difficulty, as they call upon us to apply rules which have been heretofore adopted, to a state of facts somewhat dissimilar to any we find in the cases reported.
The first is, whether there was, at the happening of the loss, a continuing or subsisting interest in the plaintiff in the subject matter of the insurance. I state the question thus, because at the time when the policy was effected, it is admitted the vessel insured was the sole property of the plaintiff, and his interest was therefore rightly described.
The second question is, whether the loss was of a nature to justify a verdict as for a total loss, without any offer to abandon ; and this involves in it the question, - whether under the circumstances proved the master of the vessel had authority to sell her, so as to vest the property in the purchaser. And this latter question is material, because the necessity of an offer to abandon can be denied upon no other ground, the vessel in fact subsisting in specie after the loss for which indemnity is sought, and down to the time of bringing the action.
In regard to the first question, the important facts are, that after the insurance was made and before the loss happened, the plaintiff had, by bill of sale duly executed, transferred the vessel to the Hooles, taking from them on the same day *275 a written memorandum signed by them, in which they p'Omise to apply the proceeds of the vessel to the payment of certain notes and obligations, due from the plaintiff, on which they, the Hooles, were responsible. And afterwards, and still before the loss, this memorandum was given up and a covenant was entered into under the seals of the Hooles, that they would apply the proceeds of the vessel and other property which had been transferred to them as security, to the same purposes mentioned in the memorandum, and would pay over any surplus there might be after indemnifying themselves, to Morgan S. Gordon.
Now if this transaction is to be viewed as an absolute transfer of property in the vessel to the Hooles, leaving no legal or equitable interest in the plaintiff, certainly there was nothing for the insurance to operate upon at the time of the loss. A man who has sold property insured, and received its equivalent in the price, cannot be said to suffer when the property is destroyed, nor can the purchaser avail himself of the insurance, because no contract was made with him, unless the insurer assents to the transfer and agrees to continue his liability. The case of Carroll v. The Boston Mar. Ins. Co., 8 Mass. R. 515, settled this point, and the English cases are to the same effect.
But a conditional transfer of the property insured, to se cure a debt or a liability, is not attended with the like consequence. One who has mortgaged his vessel even to the full value, has an insurable interest. I cite for this Phillips on Insurance, 41, and in the margin of that page will be found numerous American and English authorities in support of the position. I have looked into those cases and find they fully maintain the position. It is unnecessary to cite them again here, for it is time to stop somewhere in the citation of authorities. I take this opportunity to say, that 1 have found it more easy to get at all I have wanted upon any branch of the law of insurance, from Mr. Phillips’s book, than from any other work on insurance which I have been used to consult.
If the equitable interest of a mortgager is capable of being insured, I think it will follow, that if the insured mort *276 gages after the insurance is made; he nevertheless continues t0 be interested so as to have a right to recover in case of loss. He may, it is true, have disabled himself from transferring the property by abandonment, by the mortgage, but this can affect his contract no further than to prevent his turning into a constructive total loss what otherwise would not be so ; that being, as I conceive, the only legal effect of an abandonment. The insured is never obliged to aban don in order to recover the loss which has actually accrued. If the ship is injured in the proportion of three fourths 01 her value, he may refit her if he chooses, and claim his indemnity to the full amount of his actual loss. And in case. of an absolute destruction of the thing insured, an abandonment would be a mere idle ceremony. Lex neminem cogii ad vana seu impossibilia. Not only may a mortgager insure his interest, but so also may a cestui que trust, who has no legal interest in the subject matter.
Now we are to see what is the effect of the transaction between the plaintiff and the Hooles in relation to the vessel insured. Taking it to be bond fide, as we are bound to do, there being no evidence to the contrary, as between the parties it amounted to nothing more than a pledge or mortgage of the vessel to secure a debt or an indemnity. Admitting that the memorandum not under seal, could not foi that reason amount in law to a defeasance of the deed of sale ; yet if it was so intended between the parties, the covenant which was afterwards substituted would in equity have that effect, so that there can be no doubt that a court of equity would compel a reconveyance of the vessel, if the Hooles should have been indemnified without a sale of her, and if sold, they would be compelled, upon their covenar t, to discharge so much of the debts of the plaintiff as her proceeds would amount to, or answer for damages at law upon their covenant. Certainly then the plaintiff was interested in this vessel at the time of the loss, for he is thereby left indebted to an amount equal to her value, which but for the loss would have been discharged.[1]
*277 But this seems to us to be one of those cases, in which the insured cannot claim a total loss by virtue of an abandonment, because by reason of the transfer to the Hooles he had disabled himself from putting the underwriters on the footing which they had a right to expect in case of a loss, from the interest which the plaintiff appeared to have in the vessel at the time of the insurance. He then was in fact, as well as by representation, the absolute and direct owner of the vessel, and so was able to convey a title to the insurer by abandonment ; but afterwards, by his own act, was divested of the legal title, so that he had no dominion over the property itself and could transfer none. If the loss therefore was partial in its nature, it must remain so, as it cannot be converted by abandonment into a total loss. This doctrine is intimated in several cases. Higginson v. Dall, 13 Mass. R. 96 ; Lucena v. Craufurd, in Error, 2 New Rep. 311 ; in which case Sir James Mansfield C. J. said, “ The incapacity to abandon, as I apprehend, will have no other effect than this ; that the person who cannot abandon can never recover for a total loss. While any thing remains of the things insured, he may take that and make the most of it ; he can only recover for a partial loss.” He is speaking of the case undoubtedly of a constructive total loss. Chambre J. was of opinion, that where there is no power of abandonment there is no insurable interest; if this be true, then none but those who have the absolute property can insure ; which is certainly contrary to well established doctrine.
In the case of Locke v. North Am. Ins. Co., 13 Mass. R. 61, the want of power in the plaintiff to abandon, was held to be no objection to his recovery ; and the doctrine is there recognised, that when the interest is of a kind not to admit of an abandonment of the property, the insured shall recover only the amount actually proved to be lost, thus giving the insurer the benefit of the salvage, which is all he could get by an abandonment.
We must therefore settle the other question presented, which is, whether the loss proved in this case was in its nature total ; if it was not, as there was not and could not have been any effectual abandonment, there must be a new *278 trial. And the best test to ascertain this, is to see whether, had there been no transfer of the vessel after the making of the insurance, the plaintiff could have recovered for a total loss without an offer to abandon. If he could, there is no reason why he should not recover under the actual circumstances. If he could not, he cannot have placed himself in a more favorable situation by his own act of parting with the legal title to the property.
The loss, whether partial or total, was clearly occasioned by the perils insured against. An actual injury was done to the vessel by the violence of the wind and sea. The im mediate effect of the peril was not however a destruction of the vessel; she was left in specie, so that without some consequential act it was not a case of total loss in a natural sense, but one capable of being converted into a constructive total loss, provided she was irreparable except at an expense exceeding half her value ; and whether this expense should arise from the greatness of the actual damage done, or from the difficulty of procuring the repairs in the place where the vesáel was, is immaterial, if the repairs were necessary to put the vessel in a safe and proper condition for sea. In this situation the master caused the vessel to be broken up and sold, and if this was a justifiable act on his part, and the purchaser acquired a good title against the former owner by virtue of his conveyance, it should seem that an offer to abandon would be one of those vain things which the law will not require to be done. If the property was gone from the plaintiff by means of this act of the master, there was nothing to abandon, and it would be quite as sensible to re quire an abandonment if the ship had been destroyed by fire, or sunk in the bottom of the ocean. The money arising from the sale in such case must be held by the master to the use of the underwriters ; it is their property without any abandonment; and if it come to the hands of the insured, it may be deducted from the loss as. so much paid, this being what is called a total loss with benefit of salvage. But this result depends entirely upon the causes which led to the sale ; for it is certain that a master of a vessel as such has no authority to sell the vessel or the cargo, unless in a case of ex *279 treme necessity, and where he acts with the most perfect good faith for the interest of those who are concerned in the property.[1]
There has been a great difference of opinion in courts and among judges upon this subject, insomuch as perhaps to warrant the declaration of Lord Eldon, in the case of Smith v. Robertson, 2 Dow’s Parl. Cas. 479, that notwithstanding the boasted certainty of the law in relation to insurance, there is as much uncertainty in this as in any other branch of the science. The very ground upon which the authority rests, namely, extreme necessity, is pregnant with uncertainty, as the facts which create it will vary in their effect upon minds differently constituted.
All the judges who have adverted to this subject, except Lord Mansfield, have put the authority of the master to sell, upon the ground of extreme necessity. That eminent judge said, in the case of Milles v. Fletcher, 1 Doug. 234, “ Whatever it was right for the captain to have done, if it had been his own ship and cargo, the underwriters must answer for the consequences of.” Probably however his opinion as to this discretionary power was grounded, upon a state of facts which would constitute a necessity of acting.
Chief Justice Gibbs, in Green v. Roy. Exch. Ass. Co., 6 Taunt. 68, seems to adopt the same opinion, but expresses himself in different language. He says, “ I think the assured ought to have acted as if the adventure had not been in *280 sured; and if a man of common prudence would have rePaired the ship for his own advantage, not being insured, he should have done so on account of the underwriters; otherwise he would be selling the ship for the purpose of throwing the loss upon the underwriters.”
In the case of Idle v. Roy. Exch. Ass. Co., 3 Moore, Chief Justice Dallas says, “ The right to sell, as between the captain and the owners, has been deemed of a very questionable nature; although upon the whole, extracting from the books what seems to be the weight of authority, I conceive that the right to sell must be considered to exist in cases of extreme necessity; a right, however, which in all cases must be strictly watched.”
In Hayman v. Molton, 5 Esp. 65, Lord Ellenborovgh said, “ Where a ship has received irremediable injury, I am disposed to go as far as I can to support what has been contended for, that the captain, acting bond fide, might sell the ship for the benefit of the owners.”
In Thornely v. Hebson, 2 Barn. & Ald. 518, Bayley J. says, “ The sale, in order to constitute a total loss, must lhave been found to have been necessary, and wholly without the fault of the owners.”
1 And in The Gratitudine, 3 Rob. Adm. Rep. 240, and in another case, The Betty Cathcart, 1 Rob. Adm. Rep. 220, Sir William Scott recognizes the same principle in relation to the cargo, which ordinarily the master of the ship as such is a stranger to.
There are several New York cases in which the same principle is adopted; I think we may therefore take it to be established law, that the master of a vessel insured, which has received damage by the perils of the seas, may in cases of necessity sell the vessel, and that upon such sale so occasioned may be founded a claim against the underwriters for a total loss; whether with or without abandonment, is another question for consideration. Whether such necessity existed or not, must be always a question of fact for the jury. This necessity must be of a moral nature, resulting from certain facts and circumstances, which are to be judged of, first by the master himself, and afterwards rejudged by a jury, *281 and perhaps with some strictness, on account of the danger there may be of an abuse of this authority by collusion between the master and owners to the prejudice of the underwriters, or by the fraud of the master alone, to answer some private purpose of his own, or to defraud the owners.[1] But the jury will judge of the conduct of the master from the state of things at the time and place when and where the sale took place, from the conduct of the master in the measures preliminary to the sale, and from the actual circumstances attending it. If the vessel has met with any considerable sea damage, the usual course is to obtain the opinion of competent persons as to the degree of injury, the means of repairing it, and the fitness or unfitness of encountering the expense which may have become necessary. These opinions, founded on facts which are known to the persons composing the board, from actual observation and from personal examination of the vessel, though not conclusive, are certainly very strong evidence of the condition of the vessel, and of the propriety of repairing her or breaking her up as unfit for repair.
Now I think when a vessel has been so far injured by a peril of the sea as to make a survey necessary, and the master with perfect good faith calls such a survey, and the persons appointed to take it are competent in point of skill and wholly disinterested, and they after a full and sufficient examination of the;vessel find her essentially injured, and come to a fair conclusion, that from the high price of materials and of labor, or the difficulty of procuring them, the expense of repairing will be more than the worth of the vessel after she is repaired, and therefore they advise for the interest of all concerned, that the vessel be sold,—in such a state of things as this, it seems to me that a moral necessity is imposed upon the captain to act according to their advice. It must be considered, that thus situated he becomes by law an agent for the insurers as well as the insured, and is equally bound to look to the interest of both. Shall he, in defiance of such an opinion, proceed to repair the vessel, with the *282 certainty of adding to the misfortune which has already be* fallen either the owner or the insurer ? Or shall he leave the vessel without selling or repairing, until he shall return home and communicate her situation to those concerned, that they may act for themselves in relation to her ? I think neither of these things would be expected of him, and that such a course would be exceedingly prejudicial to commerce. The only alternative left for him, is, to pursue the advice of that body of men who by the usages of trade have been immemorially resorted to on such occasions. If they acted fairly and the captain acted fairly, his acts in conformity with their opinions will be justified, unless it shall be made to appear by those who contest the loss, that the facts on which they founded their opinion were untrue, or the inferences they drew from those facts were incorrect. And the burden of proof should be upon those who would impeach these proceedings. If they should be successfully impeached, I t ink the sale of a vessel founded upon them cannot be set up as a ground for a claim of total loss against the underwriters. And in relation to this subject the charge to the jury was incorrect. They were instructed, that if the captain acted bona fide, and the surveyors conducted themselves honestly in examining the vessel and reporting their opinion, the sale was justifiable and constituted a total loss without abandonment.[1] The instruction should have been, that if they were satisfied from all the evidence, giving due weight to the opinions of the surveyors, that the sale was necessary, then the sale constituted a total loss. And we think that an offer to abandon would not have been necessary, but the fact itself of a sale would constitute a total loss.
Opinions are not very explicit upon this subject. Some of the judges say, that while the thing insured remains in specie, whatever damage it may have received, the loss cannot be rendered total without abandonment. And this no doubt is correct, where the insured has a property in the vessel which can be transferred by abandonment. But if the property has passed out of him by a sale which is warranted *283 by the rules of law, no imaginable advantage can result from an abandonment ; and it is probable the general expression above referred to was applied only to cases of that nature. We find there are cases of total loss claimed and allowed without abandonment, where the vessel has been regularly condemned and sold.
Such was the case of Idle v. The Royal Exch. Ass. Co., 3 Moore, 145, decided in the Court of Common Pleas. It was said in argument by the counsel for the defendants, that this case was overruled in the King’s Bench, on error, as reported in 3 Brod. & Bing. 147, but this does not appear to be the fact. A venire de novo was ordered, because the record of the Common Pleas did not show that the sale was necessary ; which implies that had it so appeared, the judgment would have been affirmed.
So in the case of Mullett v. Shedden, 13 East, 304, a cargo of saltpetre bélonging to an American, shipped from the East Indies in a British vessel, was seized at the Cape of Good Hope, libelled and condemned ; afterwards the sentence was reversed and restoration decreed ; the cargo however had been sold by order of the court which passed the decree of condemnation. The insured recovered against the underwriter for a total loss, without abandonment. Lord Ellenborough said the property itself was wholly lost to the owner, and therefore the necessity of any abandonment was altogether done away. In .every case of a justifiable sale by a master, the property is wholly dost to the owner, because the purchaser will have acquired a complete title to the vessel. And yet in another case, Martin v. Crokatt, reported in 14 East, 465, an abandonment was held necessary, where the ship had been sold because she was found to be incapable of putting to sea without a heavy and very expensive repair ; but in this latter case the amount or proportion of repairs was not stated in the report of the surveyors, nor did they report that it was necessary that the vessel should be sold ; and the cargo insured by the same policy, though wholly without damage, was sold at the same time. These facts justified the opinion of the court in this case, without doubt, and render it not inconsistent with the previous decision; though the general *284 terras in which the opinion is expressed would seem to require an abandonment in all cases where the ship is not actually destroyed.
In the case of Mellish v. Andrews, 15 East, 304, a total loss was recovered on goods, which had been seized by a foreign government, without an abandonment, this being held to be an actual total loss.
In the case of Gordon v. Bowne, 2 Johns. R. 150, a total loss upon a vessel was recovered, upon the presumption, from lapse of time, that she had foundered, without any abandonment. Kent C. J. said, “ the plaintiffs had nothing to abandon. There was an absolute destruction of the whole subject, and the ceremony of abandonment would have been idle.” Now here there was spes 'recuperandi, the vessel having been absent but a year, and yet a total loss was presumed.
There certainly is much contrariety of opinion on this subject, but we think the principle on which the matter rests is, that where the property, though injured, is not destroyed, and the insured has any legal interest which he can convey, he must abandon, in order to be entitled to claim for a total loss. On the other hand, where the property is destroyed, or the title is legally divested by a lawful sale, an abandonment is not necessary.[1]

New trial granted.

 See Strong v. Manuf. Ins. Co., 10 Pick. 40; Columbian Ins. Co. v. Lawrence, 2 Peters, 46; Buck v. Chesapeake Ins. Co., 1 Peters, 162

 See Hall v. Franklin Ins. Co., 9 Pick. 477 ; Winn v. Columbian Ins. Co., 12 Pick. 282 ; Bryant v. Commonwealth Ins. Co., 6 Pick. 131 ; Robertson v. Clarke, 1 Bingh. 445 ; Somes v. Sugrue, 4 Carr. & Payne, 276 ; Cannan v. Meaburn, 1 Bingh. 243; Freeman v. East India Co., 5 Barn. & Ald. 617 ; Fanny and Elmira, Edwards’s Adm. R. 117 ; The Schooner Tilton, 5 Mason, 475 et seq ; American Ins. Co. v. Center, 4 Wendell, 52 ; Tanner v. Bennet, Ryan & Moody, 182 ; Idle v. Royal Exch. Ass. Co., 8 Taunt. 755 ; and remarks concerning this case in Read v. Bonham, 3 Brod. & Bingh. 151, note, and in Hall v. Franklin Ins. Co., 9 Pick. 481. It should be observed, that in Idle v. Royal Exch. Ass. Co. the question was, whether the master had a right to sell, so as to bind the insurers, on the facts of the case before the court. This the court considered an inquiry essentially different from that which would arise between the master and owner, in case of a sale. See this same distinction noted in The Schooner Tilton, 5 Mason, 475. See also American Ins. Co. v. Center, 4 Wendell, 52.

 See Tindal C. J. in Somes v. Sugrue, 4 Carr. & Payne, 276 ; (19 Serg. & Lowb. 285) ; Patapsco Ins. Co. v. Southgate, 5 Peters, 621.

 See Idle v. Royal Exch. Ass. Co., 8 Taunt. 755; The Schooner Tilton, 5 Mason, 475.

 See Winn v. Columbian Ins. Co., 12 Pick. 282; Patapsco Ins. Co. v. Southgate, 5 Peters, 623.
The more recent decisions in Westminster Hall go upon the principle, that if a ship be so much injured by the perils of the sea as to prevent her being used as such, and thus render a sale necessary and proper, the loss is total without abandonment. Cambridge v. Anderton, 2 Barn. & Cressw. 691 Robertson v. Clarke, 1 Bingh. 445 ; Hughes on Ins. 384; Chancellor Walworth, in American Ins. Co. v. Center, 4 Wendell, 52. See also Idle v. Royal Exch. Ass. Co., 8 Taunt. 755; Allen v. Sugrue, 8 Barn. & Cressw. 561; Tindal C. J. in Somes v. Sugrue, 4 Carr. & Payne, 276, (19 Serg. &. Lowb 385); Robertson v. Caruthers, 2 Stark. R. 571; Doyle v. Dallas, 2 Moody & Malic. 48; Gardner v. Salvador, id. 116; Roux v. Salvador, 1 Bingh. New Cases, 526.
It was held by Chancellor Walworth, in American Ins. Co. v. Center, 4 Wendell, 52, that the right of the master to sell the ship must necessarily be more extensive in this country than in England, where the doctrine of aban *285 donment for damage of fifty per cent, does not prevail. See 2 Phil. Ins. 295 But in Hall v. Franklin Ins. Co., 9 Pick. 466, the stricter doctrine of the English law was asserted and maintained; and Kent holds that this strict rule is the one best supported by reason and authority. 3 Kent’s Com. 2d ed.) 173, n. (c).