### Dow *vs* WHETTEN and others.

Where goods are shipped for a voyage, and a policy is effected upon the *goods out* and upon the *proceeds thereof home*, the *identical goods* composing the outward cargo, brought home in the return voyage, will not be considered as included in the words *proceeds home*, nor covered by the policy.

It is competent, however, for the assured to shew by parol proof that by the known usage of trade, or by use and practice, as between assurers and assured, the words *proceeds* thus inserted in a policy are understood to include the *identical goods*, if brought back in the return voyage.

Where such proof was offered and rejected, and a judgment reversed and a *venire de novo* awarded to enable the party to give his proof, the cost of reversing the judgment were ordered to abide the event of the cause, the court doubting whether such usage could be proved.

The *slip* or application for insurance is inadmissible in evidence to shew the intention of the parties. In a court of law it is proper evidence only to shew a *misrepresentation;* in equity it may be used to correct the policy.

ERROR from the supreme court. This was an action on a policy of insurance upon merchandize shipped at New-York for Batavia, and other ports in the island of Java, upon the *goods out* and upon the *proceeds thereof home.* The goods insured were stated in the policy to be *valued* at the *sum insured,* viz. $4000 *out,* and the policy to be *open* on the proceeds home. The goods consisted of cashmere shawls, artificial flowers, &c. &c., and by the bill of lading were to be sold at Batavia, and the proceeds returned in the same ship in which the goods were sent *out.* The goods arrived in safety at Batavia, and for some cause not appearing in the bill of exceptions, the *identical goods* were re-shipped at Batavia for New-York, and on the voyage home were *damaged.* The plaintiff claimed to recover for a partial loss. On the trial, the counsel for the defendants objected to proof of damage to the goods on the *homeward voyage,* contending that the policy on the homeward voyage applied only to proceeds, and not to the identical goods, which objection was sustained. The plaintiff then offered in evidence the *slip* or application for insurance, which was in these words: "Application for insurance. J. Dow. A valued policy for $4000 out and home, from New-York to

Batavia and back. Goods stated as in margin of policy; and offered to prove that the president of the insurance company, in token of consent and agreement, set his name to the slip and wrote thereon the amount of premium. This evidence was objected to and rejected. The plaintiff then offered to prove that the word *proceeds*, as a mercantile word in usage, was understood among merchants to include the *same goods* on a return voyage in cases like the present. This evidence was also objected to and rejected. The plaintiff then requested the judge to charge the jury, that the words *proceeds* had received such judicial construction as to include the *same goods* on a return voyage which had been sent out on the outward voyage, which the judge refused to do. The plaintiff thereupon was nonsuited, and having excepted to the several decisions made against him, moved the supreme court for a new trial, who refused the same, and gave judgment for the defendant. The plaintiff sued out a writ of error.

The following was the opinion delivered in the supreme court by the CHIEF JUSTICE:

This is an action upon a policy of insurance, whereby insurance was made upon a voyage from New-York to Batavia, and other ports in the island of Java, and at and from thence back to New-York, upon goods as per margin out, and upon the proceeds thereof home. The goods were carried to Batavia, but not being there sold, were re-shipped back to New-York and on their return were damaged.

The principle question is, whether the goods so damaged are covered by the policy, and this must be determined by ascertaining the meaning of the word *proceeds*. In the ordinary acceptation of the term *proceeds*, it conveys the same idea as produce. It is something proceeding from or produced by another. In commerce, *Webster* says it means the same amount or value of goods sold and converted into money. It also means goods purchased with such money, or exchanged for the original goods. This agrees with the cases referred to on the argument, viz. *Havens* v. *Gray*, 12 Mass. R. 76, and *Whitney* v. *American Ins. Co.* 3 Cowen, 210. In the

first of these cases, the insurance was upon 100 bales of cotton; a memorandum at the foot of the policy stated: " It is understood that the risk is to attach to the proceeds of the article mentioned in this policy in the return cargo." The cotton went to St. Petersburgh, and being dull was not sold, but consigned to a mercantile house there, who, in consideration thereof, provided for the plaintiffs a return cargo, which was lost by the perils insured against. The superior court of Massachusetts held, the return cargo thus procured was the proceeds of the cotton, within the meaning of the policy. They say that the memorandum meant, that " the underwriter took the risk home of any property which might be substituted for that which was carried out, in order to avoid the inference which might have been drawn (however absurdly) from the specification of the articles, that the insurance was upon those articles only homeward as well as outward." In *Whitney* v. *American Ins. Co.*, the insurance was upon a quantity of wine out and *returns* home. The wine was carried to Batavia, where it could not be sold, unless at a great sacrifice ; it was received by a merchant there for sale, who advanced money upon it ; that money was sent to Calcutta and invested in goods, which were lost near Sandy Hook on the homeward voyage, by means of the perils insured against. We held that the goods lost were the returns of the wines sent out. These cases decide that goods procured by the outward cargo, either by sale or exchange, or hypothecation, are substituted for, and are of course the proceeds or returns of the outward cargo. *Valin* says, if the goods described in the policy are exchanged at any port in the course of the specified voyage, the policy will apply to the substituted goods without any express provision for this purpose, when the insurance is to several ports, which seems to imply the liberty of exchanging the goods. Phil. on Ins. 69. No case has been referred to, nor have I found any in which goods have been considered the proceeds of themselves. It is the duty of the court to say what was the intention of the parties by their contract. If the insurers intended to insure the same goods out and home, it was easy to say so ; such, however, it is known is not the course of trade, and such does not seem to have been the in-

tention of the parties, judging from the import of the terms of their contract. I think, therefore, the circuit judge was correct in refusing evidence of damages sustained by the same goods sent out.

The plaintiff then relied upon the *slip*, which was as follows: " Application for insurance, J. Dow, a valued policy for $4000 out and home, from New-York to Batavia and back," goods stated as in margin of policy. This was objected to and rejected. In this decision the judge is supported by the authority of Lord Mansfield, in *Pawson* v. *Bamwett*, Doug. 12, n ; Phil. Ins. 17, 18. It was there offered to be proved that a written memorandum inclosed in the policy was part of the policy, but Lord Mansfield decided that it was a mere question of law, and would not hear the evidence ; and further, that it did not become a warranty or become part of the policy by being folded up in it. In this case it seems to me the *slip* was a memorandum of the contract which was executed in form by the policy itself; to produce the slip, therefore, to control the policy is reversing the proper order of events. Nothing is better settled, than that parol evidence of what was intended by parties previous to entering into a written contract, cannot be given in evidence to control or qualify such written contract. So, in this case, if any difference exists between the slip and the policy, the latter being the completion of the contract, must be taken to express the true intention of the parties. The intention of the assured to sell the goods at Batavia is proved also by the production of the bill of lading.

As to usage. The same rules of construction apply to policies of insurance as to other written contracts, but the usages of trade are supposed to be known to the parties, and contracts are deemed to be made with reference to them ; usage, however, cannot control what appears by the policy to be the plain intention of the parties. Phil. Ins. 17, 18, and cases there cited.

On the whole case, I am of opinion that the motion to set aside the nonsuit be denied.

*J. L. Viele, & H. W. Warner,* for plaintiff in error. The contract in this case should be so construed as to effectuate the intention of the parties. The object of the plaintiff was to

have his interest insured, both in the outward and home voyage; the inducement to the insurers was the premium on the cargoes outward and home, and to them it was a matter of indifference whether the return cargo consisted of the identical goods sent out, or of other goods, purchased with money arising from the sale of such goods. The texture of the goods, and their liability to injury, constitutes no objection, there being no restriction in the policy, and a cargo obtained at Batavia might have been equally delicate and fragile with that returned. Had the goods sent out been actually sold and re-purchased, could there have been a question as to the liability of the insurers? Then the return cargo would have been literally the proceeds of the outward voyage; and can the mere change of ownership govern the rights of these parties? The word *proceeds* strictly signifies something that *arises from, or leads from* another thing, not that grows *out of* another thing; but admitting that it ordinarily means the *product* of property invested or sold, in giving construction to a contract of this kind courts are not governed by the strict literal meaning of the words used. Thus, in *Havens* v. *Gray*, 12, Mass. R. 76, where it was agreed that the risk should attach to the *proceeds* of the articles mentioned in the policy in the return cargo, the insurer was held liable for a return cargo, *not* the proceeds of the outward cargo. Proceeds and products have some connexion with the original article, but a substitute has none, and yet here a substitute is held to be within the policy. So in *Witney* v. *The American Ins. Co.* 3 Cowen, 210, where the insurance was upon a cargo, out and *returns* home, a cargo not *the returns* of the outward cargo, but purchased with money obtained upon hypothecation of the outward cargo, was held to be within the policy. Although there be a departure from the literal terms of a policy, if the case is within the spirit and meaning of it, the insurer is bound. 1 Burr. 347. The word *proceeds* in a policy is an ambiguous term, and the court in *Havens* v. *Gray*, must so have considered it, or they would not have adjudged a *substituted* cargo as equivalent to the *proceeds* of the outward cargo. Being ambiguous, the *slip* should have been received in aid or explanation of the policy, and then it would have been manifest that the object was to have the interest of the plaintiff insured *out* and *home.*

The evidence offered to shew that the word *proceeds*, as applied to a return cargo, by *usage* in cases like the present, would include the outward cargo, ought to have been received. If the known usage of trade, or use and practice as between assurers and assured, have given an appropriate sense to terms used in a policy, they must be construed according to that sense. Evidence of such usage is therefore received, and accordingly it has been allowed to prove that *boys* are *men*, Dougl. 12, n. 3; that a *certificate* of proof of ownership of a vessel is a *sea letter*, although it is not in fact a sea letter, 2 Johns. D. 531; that *sarasparilla*, although a *root*, within the general meaning of the term, is not a *root*, within the meaning of a policy, 7 Johns. R. 385; and that *bear skins* with the fur on are not *skins*, as enumerated in memorandum articles, 7 Cowen, 202. Commercial contracts are an exception to the general rule, in regard to admitting parol evidence to explain a written contract, and the usage of trade may always be shewn. Parke on Ins. 30. 3 Johns. Ch. 1.

*D. B. Ogden*, for defendant in error. The goods insured were millinery; articles, from their texture, liable to injury from dampness, by a continued exposure on the water. The insurers could not have supposed that those goods would be returned from Batavia, and the assured himself could not have intended it, for in the bill of lading it is stated they were to be sold at Batavia. If, therefore, the insurers, are held liable, they will be subjected to a risk not contemplated, and not entering into the intentions of either of the contracting parties. The question, however, does not depend upon intention, but upon legal adjudication. Not a case has been quoted where an insurance was effected upon *goods* out and the *proceeds* home, where the identical goods returned to the port of departure were adjudged to be the proceeds of such goods. Indeed, the proposition involves an absurdity; how can a cargo be the proceeds of itself? In the case of *Havens* v. *Gray*, the goods in the return cargo were the *proceeds* of the outward cargo, for they were furnished by the consignee, in consideration of the cotton which had been carried out, and which remained unsold for the want of a market; and in that very case the court

pronounce the idea that the insurance was upon the articles homeward as well as outward absurd. So also in *Whitney* v. *The American Insurance Company*, the goods in the homeward cargo were the *returns* of the outward cargo, produced if not by, upon the strength, of the outward cargo. The *slip* or application was inadmissible in evidence; it was a mere proposition on the one side and an acceptance on the other, forming a contract consummated by the policy and governed by the rule of law, that where an agreement is reduced to writing, all previous treaties are resolved into it; it was incompetent also, to explain the policy, there being in it no ambiguity. 3 Johns. Cas. 1. 2 Caines, 154. As to the proof of usage: It is not denied that resort may be had to parol proof to give effect to a commercial term, and that the usage of trade may be shewn; but the mere understanding of merchants as to the meaning of a particular term in a contract, is not sufficient. That it is a usage of trade to bring back the same cargo, and that the case so frequently occurs, that the words *proceeds of a cargo* home in a policy are understood as between assurers and assured to apply to such cargo brought back, this court will not so far credit, as on this objection to reverse the judgment for the purpose of having a *venire de novo* awarded to give the party an opportunity to attempt to shew what cannot be shewn. The counsel referred to Phil. on Ins. 14 to 18.

The following opinions were delivered:

By the CHANCELLOR. The memorandum or *slip* offered in evidence by the plaintiff for the purpose of showing the intention of the parties to the policy was properly rejected. The policy itself is the only legal evidence of the agreement between the parties. If that is not in fact filled up according to the intention of the parties, through inadvertence or mistake, a court of equity may, upon clear and positive evidence of such inadvertence or mistake, correct the policy. In such a case the slip may be used in the court of equity, in connection with the evidence, for the purpose of showing the mistake and reforming the policy; but in a court of law it can be used for no other purpose than that of showing a misrepresentation on

the part of the assured. *Pawson* v. *Barnevelt*, Doug. R. 12, note 4. *Higginson* v. *Dall*, 13 Mass. R. 96. *Phœnix Fire Ins. Co.* v. *Gurnee*, 1 Paige's R. 278. This very case shows the danger of resorting to the label or slip to control the written policy, which contains the agreement of the parties at length. The latter is, in this case, a *valued* policy upon the goods out, and an *open* policy upon the proceeds home; and such was the contract of insurance between the parties, as stated in both counts of the plaintiff's declaration. But the written application, which was offered in evidence at the trial, was for "a valued policy for $4000, out and home." It is evident from this fact, that if the written memorandum is to control the construction of the policy, it will make the contract different from what even the plaintiff's counsel supposed it to be when he drew his declaration in this suit.

I think the judge was also right in declining to charge the jury that the word *proceeds* had received such a judicial construction as to include the same goods upon the return voyage. In the cases of *Havens* v. *Gray*, 12 Mass. R. 71, and *Whitney* v. *The American Ins. Co.*, 3 Cowen's R. 210, the return cargo was in fact the *proceeds* or *returns* of the outward shipments, according to the ordinary understanding of these terms; or, in other words, the returns or proceeds of the outward cargo were all included in the home cargo; and although the personal credit of the assured had been added, to complete the shipments for the return voyages, yet, as both were cases of valued policies, the plaintiffs were entitled to recover the amount of such valuation, although goods of a greater value than the amount of the proceeds were included in the return cargo. The result would have been the same if they had purchased a part of the return cargo with money, provided the whole proceeds or returns of the outward cargo were shipped upon the homeward voyage. But the *proceeds* of a cargo, in the ordinary understanding of the term, does not mean the *specific article* of which the original cargo was composed. A policy of insurance, like any other contract, is to be construed by the popular understanding, or the plain and ordinary sense of the terms employed, unless those terms have received a legal construction, or have acquired a technical

meaning in reference to the subject matter of the contract. If the terms employed have received a settled legal construction, that must govern, and no evidence of a particular custom or usage in opposition to such legal construction can be received.

In this case, however, the plaintiff " offered to prove that the word *proceeds,* as a mercantile word in usage, was so understood among merchants as to include the same goods on a return voyage." There are many cases in which parties have been allowed to prove that particular terms made use of in policies, and which have received no settled legal construction, have, among merchants and underwriters, a different meaning from that in which those terms are used in the ordinary transactions of life. Thus, the term *corn* in the memorandum articles has been held to include peas, beans and malt; but to exclude *rice, on the* evidence of commercial usage. Parke on Ins. 112. 5 Bos. & Pul. 213. So in the case of *Coit* v. *The Commercial Ins. Co.,* 7 Johns. R. 385. Although it was admitted that sarsaparilla was a *root,* within the general meaning of the term, yet the supreme court decided that parol evidence might be given to show that it was not understood by underwriters and commercial men as a root, within the meaning of the memorandum; and in the case of *Astor* v. *The Union Ins. Co.,* 7 Cowen's R. 202, where the policy was on a cargo of *fur,* evidence was received to show that among dealers in such articles the word fur included bear skins, dear skins, &c. and that they were not included in the terms *hides* and *skins,* in the memorandum articles. Upon the principle of these cases, if the plaintiff could have shown a settled usage among commercial men to consider the same specific articles, when brought back upon the return voyage, to be the proceeds of the outward cargo, and to be included in that term, he should have been permitted to give evidence to the jury. It is doubtful whether a settled usage of that kind could have been established by proof; but we cannot judicially say such a usage does not exist, and as the evidence was offered and rejected, I think that decision was erroneous, and that the judgment should be reversed. In that case a venire *de novo* must be issued, to enable the plaintiff to establish the fact, if he can, upon a new trial. There would be no justice, how-

ever, in compelling the defendants in error to pay a heavy bill of costs to the plaintiff for a mistake of the judge, if the offer was merely formal, and the plaintiff had no reasonable expectation of establishing the usage as contended for. If, therefore, the court should concur in this opinion, I think the costs of the plaintiff in error, as well as the costs of the application to the court below for a new trial, should abide the event of the suit.

Since this opinion was prepared, I have seen the first ten pages of the report of a case on this same policy in the superior court of the city of New-York, including the opinion of the chief Justice of that court, 1 Hall's R. 166; and I entirely concur in the decision as made in that case upon the questions there presented to the court. It is in accordance with the view I had taken of the language of this policy, that the term *proceeds*, in its natural and ordinary sense, would not include the outward cargo sent back in the same state upon the return voyage : and that this term in policies of insurance had not yet received such a judicial construction, founded upon known commercial usage, as to authorize the court to say it was not used in its natural sense in this policy. But so far as I can judge from the facts stated in the report, and, in the opinion of the chief justice of the superior court, there was no attempt in that case to shew a commercial usage which had given a peculiar meaning to this term in policies of insurance, or among commercial men, in accordance with the plaintiff's claim. In the case now before us, the offer to prove such usage was distinctly made, and the evidence rejected. It is on this ground alone that I think the circuit judge was wrong. I do not see how we can get over this objection, without overturning the principle upon which several of the cases before referred to have been decided.

By Mr. Senator ALLEN. The policy in this case was upon three packages of goods, valued at $4000, insured by the Hope Insurance Company of New-York, on board the ship Braganza from New-York to Batavia, and other ports in the Island of Java; and at and from thence back to New-York,

upon the aforesaid goods out, and upon the *proceeds* thereof home.

It was contended by the plaintiff that the policy covered the same goods on the return voyage, and that the word *proceeds*, as a mercantile word in usage, was so understood as to include the same goods on a return voyage ; and by the defendant it was insisted that the goods home being the same as the goods out, they were not within the description of goods insured by the policy from Batavia to New-York as the goods covered from Batavia to New-York were *proceeds*, and nothing but *proceeds* of the goods laden out. The question, therefore, is as to the proper and appropriate construction of the word proceeds.

The definition of the word proceeds is rendered by *Webster* as issue, rent, produce, as the proceeds of an estate ; in commerce, the sum, amount of value of goods sold and converted into money, as the consignee was directed to sell the cargo and vest the proceeds in coffee ; by *Rees*, proceeds among merchants is that which arises from a thing, in which sense they say the net produce ; by *Walker*, produce, as the proceeds on an estate—*a law term ;* by *Crabb*, that which arises from any thing, as the net proceeds of any sale, &c. The word proceeds, therefore has been considered by these lexicographers as a mercantile term, and they accordingly distinguish it from the same word, when used in another sense, as to proceed on a journey, or in any other undertaking.

The counsel for the plaintiff referred to Parke on Ins. p. 30, and 1 Burrows, 348 and 341, as authority for the principles for which he contended. *Parke* says : " In the construction of policies no rule has more frequently been followed than the usage of trade, with respect to the particular voyages or risks to which the policy relates." He then proceeds to state different cases in illustration of the prinples laid down, and observes that the point upon which they were decided is nearly the same in all. Several of the cases alluded to, in which the strict letter of the policy is departed from, are such as where vessels were warranted by the assured to depart with convoy, who left the river Thames without convoy, but took it at the Downs ; in which cases the court *held,* that as the custom was for vessels to receive their convoy at the Downs, the poli-

cy must be construed according to the usage among merchants, that is, from such place where convoys are to be had. So in the cases cited from 1 Burrows, 341 and 348. The first was goods insured from Malaga to England and Holland, and there safely landed. It was agreed by this policy that on arrival at Gibraltar, the goods might be unloaded and re-shipped in a good English ship for England or Holland; but there being no British ship at Gibraltar, the goods were unloaded and put in a store ship, and two days after were lost. The question was whether this was a loss within the meaning of the policy. The court *held* that it was, and that it was the same as if they had been lost in unshipping the goods from one ship to another; it being also the known course of trade at that place, it must have been intended by the parties. The second case was an insurance at and from London to any ports beyond the Cape of Good Hope, and back to London; and among other risks, the ship, her tackle, apparel and furniture were insured against fire. The vessel arrived at the river Canton, where she was to repair, and in accordance with a well known custom in like circumstances, the sails, yards and other furniture were landed and placed in a store house built for the purpose, in order to be repaired, when they took fire and were destroyed. The question was whether the insurers were liable for the loss, if having happened on shore, and not on ship board. Lord Mansfield *held* that they were, as the words of the policy make no distinction between the loss, whether on land or sea. If the ship had been driven on shore by a hurricane and there burnt, or if she had taken fire in a dry dock, the insurers would most assuredly have been liable, and so also in the present case. I am unable to perceive, however, the least analogy between the foregoing cases and the one under consideration. They were decided in accordance with a well known custom, and therefore precedents in abundance are to be found on record; but in the present no custom could have existed to sanction the principle contended for, or we should have been presented with decided cases on the point in controversy; none have been shewn.

If our decision, however, is to be governed by the intention of the parties and the usage of trade, it may be well to see

how the facts in the case agree with intention and usage. That either of the parties to the policy intended that the same goods sent out should be returned, is, to say the least of it, very improbable. No man in his senses, I should suppose, would send goods to a distant market with the intention or even the expectation that they would be returned again. That such cases may occur is quite likely, but it is presumed the occurrence is so rare that there are few, if any instances, where it has been thought necessary to provide against the event. The provision in the policy is, that "the said goods hereby insured are valued at the sum insured out, the policy to be open on the *proceeds home.*" The only inference which can be drawn from this part of the policy is, that as the value of the goods to be sent back being the proceeds of those sent out, could not be ascertained, the amount to be insured was to be governed by the invoice designating such value when that should be received, evidently showing that the intention of the parties was, that the goods home were not to be the goods out. The outward bill of lading consigns the three packages of merchandize to Abraham Kentzeng, jun. and an endorsement on the bill states, that " said goods are to be sold at Batavia, and the *proceeds* returned in said ship." Nothing, I should suppose, could indicate the intention of the parties plainer than these instructions from the plaintiff to his consignee ; and I conclude, therefore, that it was not the intention of the parties, at the making of the policy, that the same goods should be returned.

As to the usage of trade, " that the word *proceeds*, as a mercantile word in usage, was so understood among merchants as to include the same goods on a return voyage," I can only refer to the different lexicographers, who have united in opinion that it is a mercantile word, and means that which arises from any thing sold, bartered or exchanged, or any thing proceeding from or produced by another thing. Phillips, in his Treatise on Insurance, refers to a number of cases, where mercantile custom and usage was resorted to, in order to explain the meaning of words in a policy ; none of them, however, are more applicable to the case before us than those referred to by the counsel for the plaintiff in error, except the

question whether sarsaparilla was a root, included in articles

perishable in their own nature, and whether rice was compre-
hended in the term corn, may be considered as applicable.
Now, sarsaparilla is a root, although not perishable in its own
nature, and rice is corn, though not usually designated as
such ; and a rational doubt might arise, therefore, whether
either of them was included in the memorandum articles ; but
how can any doubt exist on the question whether the same
goods are the proceeds of the same goods ?  The usage alluded
to by Parke is, " with respect to the particular voyages or risks
to which the policy relates."    Now, the difference in this case
does not arise from any thing peculiar in the voyage ; but,
the risk was on a particular description of goods out, and their
*proceeds* home, and there was no occurrence on the voyage
that could alter the plain and obvious meaning of the policy.

The supreme court refers to two cases, viz. *Havens* v. *Gray*,
12 Mass. R. 76, and *Whitney* v. *The American Ins. Co.*, 3 Cow-
en, 210, where the insurance was on certain goods out, and
their proceeds home.   It appears the goods came to a bad
market, and the consignees not being able to sell, except at a
great loss, they advanced money for the return cargo, on the
pledge of the goods consigned to them, and then in their pos-
session ; on the voyage home the goods were lost.   In these
cases, it seems, the insurers contended for a strict construction
of the word *proceeds ;* that nothing purchased, except with the
money actually received for the cargo out, could be its *proceeds.*
It was *held*, however, that it made no difference as to the lia-
bility of the insurers, whether the return cargo was procured
by the sale or exchange of the outward cargo, or by a deposit
of the outward cargo, and a credit raised upon it.  There is cer-
tainly a wide difference between these cases and the one un-
der consideration.   In those cases the return cargoes were, in
effect, the *proceeds* of those sent out, for it was upon the credit
and pledge of the goods sent out that the return cargo was
furnished ; but, in the present case, we are asked to decide
that the same goods are the proceeds of the same goods, which
is too preposterous for a moment's consideration.

On the trial of the cause the counsel for the plaintiff offered
to produce the slip, or application for insurance, which the

judge held to be inadmissible. These applications are always in general terms, and intended, in the first instance, by those offering them, to ascertain the amount of premium charged by the company applied to ; and they only state, therefore, the amount to be insured, the description of goods, and the place to which they are to be sent ; no particulars are stated, those being left to be arranged when the policy is executed. I think, therefore, that the judge was warranted in rejecting this testimony, and that upon good authority, as it has been *held* that the contract itself is conclusive proof of the intention of the parties, and though a usage should be proved, that the slip was to be a part of the contract, it could not operate to set aside or control the policy ; and whatever may be the proposals between the parties prior to the execution of the policy, they are to be considered as waived, if not inserted in the contract, or contained in a memorandum annexed to it. *Pawson* v. *Barnevilt*, Dougl. 12. *Higgison* v. *Dall*, 13 Mass. R. 96.

I am of opinion that the judgment of the supreme court *ought to be affirmed.*

On the question being put, *Shall this judgment be reversed ? seventeen* members expressed their opinions in the affirmative, and *five* in the negative. The members who expressed their opinions in the negative were Senators ALLEN, CARY, CONKLIN, DEITZ and TODD.

Whereupon the judgment of the supreme court was *reversed,* and a *venire de novo* directed to issue ; the costs of the writ of error and of the motion for a new trial in the supreme court to abide the final event of the cause.