REZIN A. WIGHT, assignee &c., *vs.* ELIPHALET WOOD.

The defendant received from the plaintiff's assignors certain shares of stock, and executed an instrument acknowledging the receipt thereof, and further saying, therein, "which stock I am to do the best I can with, and have one half of the proceeds."

*Held* 1. That there was not an absolute sale of one half of the stock to the defendant.

2. That the fair and reasonable construction of the agreement was that the defendant was to receive the certificates, and within a reasonable time dispose of said stock upon the most advantageous terms which he could procure, and when that was accomplished, and the proceeds were realized, he was to receive one half thereof, as his compensation.

3. That the sale or other disposition of the stock, by the defendant, was a condition precedent to his acquiring any interest in such stock, or the proceeds thereof; and that the proceeds of the stock did not mean the stock itself.

4. That if the defendant had *sold* the stock, fairly, at whatever price he could obtain, he would have been entitled to retain one half of the proceeds of the sale; but that having retained the stock for more than ten years, without effecting a sale thereof, he was not entitled to retain one half of such stock as his own, but was bound to account to the plaintiff for said stock, together with the dividends he had received thereon. HOGEBOOM, J., dissented.

MOTION for a new trial, upon exceptions ordered to be heard in the first instance at general term.

The action was brought by the plaintiff as assignee of Gaylor Sheldon and Alexander G. Sheldon, against the defendant, to recover sixty shares of the stock of the Illinois and Mississippi Telegraph Company, and also the sum of $630, with interest thereon, being dividends received by the defendant upon said stock.

On the 15th of May, 1854, the said Gaylor and Alexander G. Sheldon were the owners of said stock, which was nominally of the value of $50 per share. And on that day they delivered to the defendant six certificates representing the said stock, and the latter thereupon executed and delivered to the said Sheldons an instrument in writing of which the following is a copy: "Recd. Albany, May 15, 1854, from Sheldon & Wood, sixty shares tele-

graph stock, amounting to the nominal amount of three thousand dollars, which stock I am to do the best I can with, and have one half of the proceeds." The defendant retained the said certificates until the 8th day of December, 1864, when the plaintiff demanded them, together with the dividends which the defendant had received thereon, amounting to $630, and the defendant refused to surrender the same. From the time of the delivery of said certificates up to said 8th day of December, 1864, neither the said Sheldons or the plaintiff in any manner interfered to prevent a sale or transfer of said stock by the defendant. The defendant did not sell or transfer such stock, but retained the same, collecting and retaining dividends from time to time. All that the defendant claims to have done was to carry on some correspondence with certain third parties, in reference to the stock and its value, and expending some money in traveling and negotiating in reference to a contemplated disposal of the stock. The court decided that the plaintiff was entitled to recover one half of the said sixty shares of stock, to wit, thirty shares thereof, and one half the dividends declared thereon, with interest thereon from the time it was received by the defendant, less one half of the dividends received by the plaintiffs, with interest; and directed a judgment that the defendant surrender up one half of said stock to the plaintiff, and pay the one half of the dividends and interest, with the deductions above stated; and that each party should pay his own costs, unless, upon appeal, it should be determined that the plaintiff was entitled to the whole of the stock; in which case, the plaintiff was to have costs. The plaintiff excepted to the part of the decision of the court which determined that the defendant was entitled to one half of the said stock and dividends, and to so much as denied the plaintiff the costs of the action.

*John H. Reynolds*, for the plaintiff.

I. The whole question depends upon the construction of the receipt given by the defendant, for the stock in question, on the 15th of May, 1854, by which the defendant acknowledged the receipt of the stock, "which stock I am to do the best I can with, and have one half of the proceeds." The stock was never sold, or in any way disposed of by the defendant, and it is submitted that the defendant never acquired any title to any portion of the stock, and the plaintiff was entitled to recover the whole. 1. At the time of the execution of the receipt, the stock belonged to Gaylor and Alexander G. Sheldon, and the receipt did not purport to, and did not in fact, transfer any title in it, to the defendant. It remained the property of the Messrs. Sheldon until it was transferred to the plaintiff. 2. The only right which the defendant acquired, in any event, was to "*one half of the proceeds;*" and that language implies that the defendant was to sell or exchange the stock for something else, and of that other thing, be it money or property, the defendant would be entitled to one half. The proceeds of any article of property is not the property itself. (*Dow* v. *The Hope Insurance Co.*, 1 *Hall*, 166. *Havens* v. *Gray*, 12 *Mon.* 71. *Whitney* v. *The American Ins. Co.*, 3 *Cowen*, 210.) 3. In order to sustain the ruling at the circuit, it must be held that upon the execution of the receipt or agreement the legal title to one half of the stock vested in the defendant, and thus, without doing anything, incurring any expense, or paying any consideration, he became owner of one half of the property; and being owner, he need do nothing towards converting it into money or other property, and yet be entitled to one half the stock for which he has done nothing and paid no consideration. 4. The true construction of the transaction is, that the defendant was to take the stock, and convert it into money or other property, and for his services in so doing he should be entitled to one half the proceeds or

property obtained in exchange. 5. At the time the defendant received the stock it was of small value, and has since become valuable, by no act or agency of the defendant. Not having sold the stock or exchanged it for other property, the contingency has not arisen, giving him any interest in it. The effort to sell it or exchange it for other property, is not enough, for the same identical shares are not their *proceeds*, in any sense.

II. The judgment should be reversed, and a new trial ordered.

*Samuel Hand*, for the defendant.

*By the Court*, INGALLS, J. We are unable to agree with the learned justice, in the conclusion to which he arrived, in this action. There certainly was not an absolute sale of one half of the stock in question, to the defendant. In my judgment, the fair and reasonable construction of the agreement is this : The defendant was to receive the certificates, and within a reasonable time dispose of said stock upon the most advantageous terms which he could procure, and when that was accomplished, and the proceeds were realized, he was to receive one half thereof, as his compensation. The sale or other disposition of said stock by the defendant was a condition precedent to his acquiring any interest in such stock, or the proceeds thereof. The receipt does not state that the defendant was to have *one half of the stock, but one half of the proceeds*—clearly contemplating a conversion of the stock into money or some other property. The proposition cannot be sustained, upon principle or authority, that the proceeds of the stock means the stock itself. (*Dow* v. *Whetten*, 8 *Wend.* 160.) There is nothing in the case showing that custom or usage has given to the word "proceeds," as applied to stocks, a meaning at variance with the ordinary definition of the word. It cannot be inferred that the Sheldons in-

tended to make a gift to the defendant of one half of said stock. The very language of the receipt conflicts with such an inference. No; it is clear that the defendant was to *earn an interest,* by contributing his time and skill, and thereby effect a sale of the stock for the mutual benefit of himself and the Sheldons. There was conferred upon the defendant an unlimited discretion in regard to the manner of disposing of the stock, and surely he was allowed more than a reasonable length of time to accomplish the object, as ten years elapsed from the receipt of the certificate and the demand of the stock. If the defendant had sold the stock fairly, at whatever price he could obtain, he would have been entitled to retain one half of the proceeds of such sale. I am at a loss to understand why the defendant should be allowed to retain one half of said stock. It is stated that he corresponded, more or less, with third parties, and expended some money in traveling with a view to the disposition of the stock; but it does not appear how much money he expended, or how much time he devoted to the enterprise. It does appear that he has received, in dividends, $630. One half of which would, probably, amply compensate the defendant for all that he had expended in the matter. It does not appear that the stock has materially changed, as to value. We are unable to discover upon what principle of law or equity the defendant can reasonably claim to retain any portion of said stock. If it appeared that the Sheldons had prevented or embarassed the sale of said stock, and had not allowed the defendant ample time to dispose of the same, a very different question would be presented for our consideration. It is suggested that the Sheldons should have exacted a sale before demanding the stock. I cannot agree to this proposition, as it is evident that the stock was placed in the hands of the defendant for that purpose, and he was left in the undisturbed possession thereof, for the period of about ten years, and

no further action was necessary, or could reasonably be required of the Sheldons to inform the defendant in regard to his duty. We are therefore of opinion that the defendant acquired no title to the said stock, and that the court erred in awarding to him one half thereof; and for this reason a new trial should be granted, with costs to abide the event of the action.

HOGEBOOM, J., (dissenting.) The facts of this case, as assumed or proved, lie within a narrow compass. The defendant received certain shares of stock, of the plaintiff's assignors, *to do the best he could with them, and have one half of the proceeds.* He did the best he could with them, (and so far as appears, that any body could,) and claims one half of their present value, or the proceeds of any sale that may be made or ordered. The stock has not been actually sold; the defendant, in the exercise of a wise discretion, finding it appreciating in the market, concluded it was best to retain it on hand. The plaintiff, finding it actually unsold, claims the whole stock as his, forbids a sale by the defendant, and brings this action to compel a transfer of the whole to him, including one half of the dividends. It is proved or conceded that the defendant has spent time and money and his best exertions in managing the stock, with a view to its ultimate disposition. The dividends of late years have constantly increased in amount, and we may reasonably conclude the stock has a higher market value than ever before. It is not denied but that the defendant had absolute authority to sell the stock one moment before the suit was commenced, and for aught I can see, had such authority afterwards, not being restrained by injunction; though he was forbidden to sell by the plaintiff, and chose, as he lawfully might, to act in conformity to that prohibition. Of that the plaintiff cannot complain, and must accept the position of having disabled him to sell. I think both the

Wight *v.* Wood.

legal and equitable consequences from this state of things very plain; and these are, that the plaintiff cannot take away that stock from the defendant without accounting to him for one half of its value or proceeds.

There are three questions in the case: 1st. Is the present condition of the case a *casus omissus*, or is it embraced by the contract?

2d. Is the plaintiff's construction of the contract the right one?

3d. If not, has the court below made the proper decree; or is it one of which the plaintiff can complain?

I. I think the case is within the contract. The power given to the defendant over the stock is an authority coupled with an interest. I doubt if it could have been reclaimed by the plaintiff's assignors immediately after its execution. The defendant had rights under it, as well as the plaintiff. But it is not necessary to consider that question. The defendant acted under it for a series of years—performed services—devoted time—expended money in the execution of the trust. He did just what the contract called for; and *all* the contract called for, unless it was a sale of the property, which will be presently considered. I think the contract was intended to embrace every possible contingency. This is independent of the question whether the defendant fully performed the contract, or not.

II. The plaintiff claims that if the defendant did not sell, he lost entirely his claim to one half of the proceeds. This is neither just nor legal. It might well be that the very best thing the defendant could do with the stock (and this he was bound by the contract to do) would be that he should *not* sell. Under such circumstances, a sale would be a *violation*, and not a *performance* of duty. In such case an action would not lie for compelling a transfer of the stock, or for damages for not making a sale. But assume that the time had elapsed in which a sale

ought to have been. had. Then the defendant would doubtless be liable in damages, if he had not done as well as he could. But still the stock would not be the plaintiff's. The defendant would be liable for the difference in value between the present price of one half of the stock and what it would have brought if sold at the proper time; that is, that in the event that *a sale* was absolutely indispensable to be had under the contract, which I doubt. The stock in its present condition, *grown up* to be a valuable stock, yielding large dividends, may, without violence to language, be said to be the *proceeds, product* or *result* of the original comparatively worthless and unmarketable stock in the condition it was when placed in the defendant's hands.

III. But assume a sale to be necessary; the consequence of not selling is not to make the stock the plaintiff's; especially when the plaintiff forbids a sale. The true legal consequence is that a sale should be *ordered,* and the proceeds equally divided between the parties, subject, if the defendant had been guilty of a violation of duty, to a deduction of such damages as the plaintiff had sustained by not making an earlier sale. In the present case no damages are pretended to have been sustained, and the true as well as equitable rule was to order a sale and to divide the proceeds. Perhaps in strictness this should have been the order of the court. But the order actually made was equally favorable to the plaintiff, and he has no cause to complain. He can sell the stock, himself, and thus realize the precise result contemplated by the contract, and take one half of the proceeds.

The disposition of the case made by the court below, as to costs, is not a matter of which the plaintiff can rightfully complain. He demanded more than he was entitled to, to wit, the transfer of the whole stock, and did *not offer* to account for the dividends he had received. He was at

least equally in fault with the defendant, and cannot object that costs were not imposed on either party.

I think the disposition made of the case at the circuit was right, and should be sustained.    Perhaps the case sufficiently raised questions of doubt and importance to justify a division of the costs on the appeal as well as in the original tribunal, and I am therefore content that a new trial should be denied, and that judgment should be rendered for the plaintiff in accordance with the disposition of the case at the circuit, without costs of appeal to either party.

New trial granted.

[ALBANY GENERAL TERM, May 6, 1867.   *Peckham, Ingalls* and *Hogeboom,* Justices.]