Charles Clements *v.* George Bolster, Frederick W. Bolster and George W. Bolster, partners trading as George. Bolster & Sons, Appellants.

*Epistolary contracts—What amounts to, in law.*

When a contract is epistolary, consisting of a series of letters, containing inquiries, propositions and answers, it is necessary that some point should be attained, at which the distinct proposition of the one party is unqualifiedly acceded to by the other, so that nothing further is wanting on either side to manifest that aggregatio mentium, which constitutes an agreement, and that junction of wills in the same identical manner, offered on one side and concurred in by the other, bringing everything to a conclusion which in contemplation of law amounts to a contract.

It is not a contract where an offer is made to buy a monument at $600 adding " we would like to have your derrick to set up monument. We will pay freight on derrick to return ; " to which plaintiff replied asking' that $15.00 more be allowed, and added : " I have entered your order— Now as to derrick, you would hardly want one sent from here, as that would be too expensive for you. Why not get one from Philadelphia or

Harrisburg?" This was but an acceptance in part; there could be no contract without an acceptance in full. A contract is not created by proposals and counter proposals; it arises only from the acceptance of a proposal.

An offer is not converted into a contract by a response proposing a deviation from its terms; it becomes a contract only when accepted in precise accordance with its terms.

Argued Nov. 11, 1897. Appeal, No. 114, Oct. T., 1897, by defendants, from judgment of C. P. Lancaster Co., Dec. T., 1894, No. 24, on verdict for plaintiff.    Before RICE, P. J., BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.    Reversed.

Assumpsit for goods sold and delivered.    Before LIVINGSTON, P. J.

It appears from the record that plaintiff based his claim on an alleged epistolary contract for the purchase and sale of a monument.    In his statement the plaintiff declared on two letters of the dates of January 23, 1894 and January 24, 1894, as forming the basis of this contract.    These letters are set out in full in the opinion of the court.

Other letters of subsequent date passing between the parties were made the subject of offers of evidence, which offers were ruled upon by the court below, some of the letters being admitted and others rejected, and these rulings are made the subjects of assignments of error.    In view of the decision of the appellate court, however, it is not material that any of the subsequent correspondence be set out in full, the plaintiff having declared only on the letters of January 23, and 24, as constituting the contract.

Verdict and judgment for plaintiff for $206.14.    Defendants appealed.

Errors assigned among others were (7) in its answer to the plaintiff's first point, which point and answer are as follows: " 1. By the letter of January 23, 1894, from Bolster to Clements, and the letter in reply thereto, from Clements to Bolster, dated January 24, 1894, which letters are admitted by both sides to have been written, sent and received, a complete contract for the purchase and sale of the monument was made, and this contract could not be changed nor added to by the defendants, ex-

cept with the consent of the plaintiff.  *Answer :* That we have affirmed in the general charge."  (9) In disallowing the following offer of testimony by the defendant: Frederick Bolster, one of the defendants, being under examination.  "Witness shown letter dated April 9, 1894, and also envelope in which it was inclosed, stamped Boston, Mass., April 9, 1894, and asked if he received that letter from Clements.  Objected to by plaintiff.  Disallowed.  Defendants except."  (11) In disallowing the following offer of defendants: "Defendants offer in evidence the letter of April 9, 1894, marked 'J. B. L.;' the envelope marked 'J. B. L. No. 2,' in which the letter was inclosed, and the draft or design marked 'J. B. L. No. 1,' which was inclosed in the same envelope and carried in the same mail.  Objected to by plaintiff.  Disallowed.  Defendants except.  The letter was as follows:

"BOSTON, MASS., April 9, 1894.

"Messrs. GEO. BOLSTER & SONS,

"EPHRATA, Pa.:

"Dear Sirs: Can you make use of a Pink Westerly Granite Headstone as per enclosed, tracing No. 14,085?  If so I will let you have it at the extremely low price of $35.00.  This is a special offer and you must not calculate upon getting another at this price.  It is an easy selling design, and I am sure you would do well with it.  Can ship at once on receipt of order.  Terms would be list.

"Both work and material are first-class, and I assure you you are getting a bargain if you accept this offer.  If you decide to take the Monument, please send your order, at once, as it is an attractive design, and one that will sell itself.

"All Scotch Granites f.o.b cars New York City, American Granites f.o.b car quarries.

"Yours truly,

"CHARLES CLEMENTS.

"P. S.   Try and sell this."

(13) In admitting the following offer of plaintiff: "Defendants object to the reading of letter of July 9, 1894, Clements to Bolster, because it is argument, made by plaintiff in his behalf.  Admitted.  Defendants except.  The letter was as follows:

" Boston, Mass., July 9, 1894.

" Messrs. Geo. Bolster & Sons,

"Ephrata, Pa.:

" Gentlemen: I have yours of the 6th in regard to Monument 13,257. You state that you are surprised at receiving my letter of the 5th of July. I do not see why you should be. Same was sent in your interests so that you could place your derrick and be ready to set the work as soon as received. You state that you did not order the monument. I would refer you to your letter of January 23, 1894, which is a direct order for the work. You write as follows:

" ' We will give you for this monument complete, $600 ; there must be letter ' B ' instead of ' H ' on Cap. This is the best we can do. It will also take headstone which we will take it and pay extra for it. We would also like to have your derrick to set the monument. We will pay freight on derrick to return ; we calculate to do more business with you in the future. We will pay for monument as soon as set up.'

" In answer to the above you have my letter of January 24, 1894. Then you wrote January 26, as follows:

" ' We will give you the job provided you write and promise best Dark Quincy including all lettering, first-class job, for $600. We are held responsible for a first-class job, and therefore must hold you responsible for it. If you will answer the letter accordingly, we will send you the inscription letters ; let us know by return mail ; state if you can send it about the 20th or 25th of April ; we will get a derrick as we have further use for it. If this job is all right, can sell several monuments on hand. On back of letter you will find sketch of headstone to be Dark Quincy, face pol., balance hammer dressed, bevel to front $1\frac{1}{2}$ ; give us price on it. '

" In answer to the above letter you have mine of January 29, wherein I told you I would accept and furnish the work at $600 and referred to giving you price on headstone in another letter.

"Now I shall insist in your taking this work, and will expect an answer by the 14th, instructing me to ship. When I told you that I would accept the order, I accepted the conditions named in your letter of the 26th.

" Yours truly,
" Charles Clements."

(14) In admitting the following offer of plaintiff: "Plaintiff offers in evidence letter dated June 28, 1895. It is admitted letter was received by defendants, but defendants object to its admission in evidence. Admitted. Defendants except. Letter read to the jury by Mr. Coyle:

"BOSTON, MASS., June 28, 1895.
"Messrs. GEO. BOLSTER & SONS,
   "EPHRATA, Pa.:

"Dear sirs: I have given instructions to attorneys to notify you that if you did not make settlement of my account within the next twenty days, either by secured note or cash, that the monument now ready for shipment to you, and which is subject to your order, will be sold at auction and proceeds from said sale will be credited to your account, and suit brought for the balance.
                    "Yours truly,
                        "CHARLES CLEMENTS."

. *B. F. Davis* and *J. Hay Brown*, with them *W. U. Hensel* and *A. E. Burkholder*, for appellants.—In Slaymaker v. Irwin, 4 Whar. 369, a case not unlike this, there is a lucid discussion of the subject of epistolary contract. The case of Allen v. Kirwan, 159 Pa. 612, is more recent and even more strongly in point. The plaintiff gives further evidence in the letter of April 9, 1894, that the contract had not been closed, and the court erred in excluding this testimony and holding as a matter of law that this letter did not refer to the monument of the January correspondence, and that it could not even be proved to relate to it.

*John A. Coyle*, for appellee.—We have a completed contract made by the letters of January 23d and the reply of January 24th. The offer was open until it reached the plaintiff, and the contract closed the moment the plaintiff mailed his acceptance to the defendant: Ames & Co. v. Pierson, 174 Pa. 597.

OPINION BY SMITH, J., January 18, 1898:
The declaration avers, as the cause of action, a contract between the parties, embodied in a letter from the defendants to the plaintiff, dated January 23, 1894, and an answer by the

plaintiff, dated January 24, 1894. The trial judge held that these letters formed "a complete contract for the purchase and sale of the monument" to which they referred. This instruction to the jury is, inter alia, assigned for error. Unless, therefore, the letters present such a contract, the declaration discloses no ground on which the plaintiff can recover, and the instruction complained of was erroneous.

These letters, as set forth in the declaration and shown on trial, we quote in full. The defendants first wrote as follows:

"EPHRATA, PA., January 23, 1894.

"MR. CHARLES CLEMENTS:

"Dear Sir: We have sold monument No. 647, of your Design Drapery spire first size. Spire 1.5×1.5×11.6  Plinth 2.0×2.0×1.3.  Cap 3.2×3.2×2.1.  Die 3.2×3.2×1.4.  Base 4.4×4.4×1.6.  To be dark quincy granite, first class job. To be six raised letters for name on base 3 1/2 in. large deep 3/8 in. sunk letters, for inscription 60, 1 1/2 inches large. We will give you for this monument in complete order, six hundred dollars. There must be letter 'B' instead of 'H' in cap, this is the best we can do. It also takes headstone which we will take yet and pay extra for it. We would also like to have your derrick to set up the monument. We will pay freight on derrick to return. We calculate to do more business with you in the future. We will pay for monument as soon as set up."

"Yours very respectfully,

"GEORGE BOLSTER & SONS."

To this the plaintiff replied on the following day:

"BOSTON, MASS., January 24, 1894.

"MESSRS. GEORGE BOLSTER & SONS, EPHRATA, PA.:

"Dear Sir: I have your favor of the 23d, giving order for No. 647 at $600, including lettering to amount you named. I have entered your order, but if you can give me $15.00 more on this I would like to have you allow it; cutting the price to $600 and not allowing anything for the lettering makes it rock bottom for good work and stock which I intend to give you in this monument.

"Now as to derrick you would hardly want one sent from here as that would be too expensive for you. Why not get one from Philadelphia or Harrisburg. This will save you money.

I think I can put you in correspondence with parties that will loan you a derrick or set the work for you.

" Yours truly,<br>" CHARLES CLEMENTS.

" P. S. Send on the lettering."

The principles on which the legal effect of these letters is to be determined are thus defined by Mr. Justice SERGEANT, in Slaymaker v. Irwin, 4 Wharton, 369: "It is incumbent on a party suing to recover damages for breach of contract, to make out a clear case of some matter or thing mutually assented to, and agreed upon by the parties to the alleged contract.   When the agreement is in writing, signed and executed by the parties, their assent to all that is contained in it, is no longer a matter of dispute; the questions which arise in such a case are of a different character.   But when it is epistolary, consisting of a series of letters, containing inquiries, propositions and answers, it is necessary that some point should be attained, at which the distinct proposition of the one party is unqualifiedly acceded to by the other, so that nothing further is wanting on either side, to manifest that aggregatio mentium, which constitutes an agreement, and that junction of wills in the same identical manner, offered on one side and concurred in by the other, bringing everything to a conclusion, which in contemplation of law amounts to a contract.   If a proposition be made by one man to another, to purchase an article from him at a certain price and on certain terms, which is accepted as offered, there is then an agreement or contract.   But if, instead of accepting it, the party declines so doing, and then new terms of purchase are offered, the assent is yet to be given by the other to the terms thus varied.   It is not a contract—it is the suggestion or proposal of a new subject of contract, on which the first party has again a right to pause, to consider, to accept, to reject, to suggest new terms; and all is in the meantime merely negotiation.   Mr. Chitty, in his General Practice, in treating of the question, when the contract may be collected from several documents or letters, extracts this rule from the authorities :   ' The whole terms of the contract when in writing need not be expressed on the same paper or documents, but may be collected from several letters containing proposals and alternate agree-

ments between the parties; but then the last communication, must be a distinct and unqualified assent, to an equally clear proposal; and if the last letter suggest any new or further proposition, requiring the assent of the other party, or some communication from him to complete the transaction, then no contract or agreement is constituted:' 1 Chitty, Gen. Prac. 118."

In Joseph v. Richardson, 2 Pa. Superior Ct. 208, in an opinion by the president judge of this court, it was said on this subject: "To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is in effect a counter proposal. This is elementary law."

According to all the authorities, a contract is not created by proposals and counter proposals; it arises only from the acceptance of a proposal. And this acceptance must be in exact conformity with the proposal; the minds of the parties must meet on every point presented in the offer. An acceptance qualified in any manner, or accompanied by any reservation, or new proposal, is not that union of minds in which the law recognizes a contract. An offer is not converted into a contract by a response proposing a deviation from its terms; it becomes a contract only when accepted in precise accordance with its terms.

It is evident from an examination of the letters of January 23d and 24th, that the proposals of the defendants were not "unqualifiedly acceded to" by the plaintiff. On the contrary, he proposed a change in the price, and suggested a substitute for the sending of a derrick which formed part of the offer. We cannot say that this part of the offer was immaterial. The defendants regarded it as of sufficient importance to be embraced in their proposal, and on this point we are not to revise their judgment and substitute our own. The plaintiff could not hold the defendants to their offer by accepting it in part; there could be no contract without its acceptance as a whole. The variation proposed by the plaintiff was, in legal effect, a rejection of the offer, and precluded its acceptance thereafter, without the subsequent assent of the defendants. "An acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiations, . . . . unless renewed by the

proposer, or he assents to the modification suggested : " Railway Co. v. Rolling Mill Co., 119 U. S. 149 ; 1 Benjamin on Sales, page 106. The letters of the parties, in the present case, recited in the declaration as forming the contract on which the plaintiff seeks to recover, do not exhibit an offer with an acceptance in such terms as to create a contract, and the seventh assignment is sustained.

A letter from the defendants to the plaintiff, dated January 26, 1894, indicates a modification of the proposals contained in .the first two letters ; and in a letter to the defendants, dated July 9, 1894, the plaintiff says, "I accepted the conditions named in your letter of the 26th." Whether the letters written in January, 1894, taken together, form a contract, it is unnecessary now to decide; but if there was a sale of the monument mentioned in the first two letters on terms other than those indicated in those letters, the plaintiff has a right to recover in accordance with such terms, though it may become necessary to amend the declaration to make the final agreement admissible. In this connection the plaintiff's letter dated April 9, 1894, becomes material, and should be admitted, while in the absence of a contract between the parties its rejection did the defendants no harm. The plaintiff contends that the word " monument," as used in this letter, corresponds in meaning to the word " headstone," also used, and that both refer to the stone therein offered for sale. The defendants insist that it refers to the monument mentioned in the two letters set forth in the declaration, and tends to sustain their contention that no contract for that monument had yet been made. While the construction of a writing is, in general, for the court, yet where "words used in a contract are technical, or local, or generic or indefinite, or equivocal, on the face of the instrument, or made so by proof of extrinsic circumstances, parol evidence is admissible to explain by usage their meaning in the given case : " Brown v. Brooks, 25 Pa. 210. Where words are susceptible of two interpretations, the ambiguity growing out of the manner in which they are used in the instrument may be relieved by showing their meaning in the trade in which they are employed and to which they are peculiar : McDonough v. Jolly Bros., 165 Pa. 542. Parol evidence, which is explanatory of the subject-matter of a written contract, consistent with its terms and necessary for its interpretation, is

admissible: Church v. Clime, 116 Pa. 146. Whether, as trade terms, at the plaintiff's place of business, at the date of the letter of April 9, 1894, the words "monument" and "headstone" were regarded as so far similar in meaning that either might be applied to such a stone as that described in the letter referred to, can be shown only by parol, and the construction of this letter may depend largely upon the evidence that may be produced on this point.

Nothing in the letter embraced in the thirteenth assignment is competent evidence for the plaintiff except the first sentence of the last paragraph, relating to the delivery of the work, and this is competent only as an offer to deliver.

The letter embraced in the fourteenth assignment was properly admitted, as an offer of delivery, and notice that unless accepted the work would be sold on the defendant's account. This was the proper course for the plaintiff to pursue, unless he chose to make delivery of the work and sue for the price.

Nothing in the remaining assignments requires further notice.

Judgment reversed, and venire de novo awarded.