## Swing, Appellant, v. Walker.

*Contract—Proposal—Acceptance—Evidence.*

Where one sues for damages for a breach of contract the burden is on him to establish a clear case of something actually agreed to. Where a proposal is made on one side, and an acceptance is given on the other, not according to the terms of the proposal, the parties are not bound.

To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is in effect a counter proposal. A qualified acceptance does not constitute a contract.

*Appeals—Assignments of error—Charge—Review.*

Comments made by the trial judge reflecting on the business capacity of one of the parties as shown by the evidence, general in character, and not in any way limiting the action of the jury, are not grounds for reversal; nor is a reference to the meager character of the evidence of one of the parties reversible error.

*Evidence—Telephone conversation—Declaration.*

A telephone conversation is inadmissible to establish admissions of one of the parties, where it appears that the witness was not acquainted with

the party's voice, and could not identify it. Such a case is not controlled by the cases which relate to communications by telephone from an office in response to communications or inquiries, and to the presumption which arises from the transaction of business by telephone from the place of business of the person in whose control the telephone is.

Argued Oct. 21, 1904. Appeal, No. 87, Oct. T., 1904, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1901, No. 3655, on verdict for defendant in case of T. C. Swing and William H. Bateman, Jr., copartners, trading as Swing & Bateman v. Jacob H. Walker and Henry Linde, copartners, trading as Walker & Linde. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for breach of contract. Before WILTBANK, J. The facts appear by the opinion of the Superior Court.

The court charged in part as follows :

[There can be no sort of question of the honesty of purpose and intention on the part of the plaintiffs in prosecuting this case, but it is almost equally clear that if their action here is an indication of their business methods, they are not liable to make much in the commercial market. You cannot bind people by writing letters which they do not answer and which are inconsistent with their previously expressed conditions.] [3]

[At that interview they had before them the specifications which had been drawn, and those specifications contained what Mr. Bateman described generally (I cannot use his language, I leave that to you to remember) as formal parts, which he said you always disregarded, or he used language to that effect, and then they contained the specific parts, the items of materials and machinery to be furnished and items of charge to be made, and a statement of the periods of time in which payments were to be made if the plant was furnished and found unsatisfactory.] [6]

[But Mr. Bateman stated, " I did not regard the early part of those specifications at all. It is true that the early part required that we should give bond to do this work, but I did not regard that," and there were other requirements which he did not regard. You cannot make contracts that way. If a man hands you a paper and says, " Here are the terms," and you go

over it with him, and he and you scratch out certain parts and interline certain parts and make changes, and then the paper stays as settled upon (as indicating what one is to do and the other is to pay) one man cannot take that away and disregard a certain part of that paper, and say, " Oh, well, I did not think anything of that. It is true it was not canceled, but it is merely formal, so I did not put it in." And therefore you find as counsel has said (and we of course impute nothing to the gentlemen who are on the side of the plaintiff but the utmost fairness of dealing) their minds did not meet. It would seem to be so—that their minds did not meet. One gentleman took away the paper, saying to himself that the provision about the bond did not amount to anything, and the other man turned over in his mind that the provisions as to the bond was a material provision ; he wanted security. However that may be, even when that interview closed no contract was made. There was no contract settled at that time. Why ? Because Mr. Bateman said, " I will take this away with me and write you a letter confirming it." That is not disputed. That is what he says, and the defendant said, " Take the schedule of specifications with you and write it out in clean, clear form." It is true Mr. Bateman says he took away the schedule, but I do not understand him to have said that he agreed to rewrite the schedule of specifications, but even if he took it away with a view to confirming the contract or confirming the order as he called it, there was no contract then settled.] [7]

Now, viewing it in the light most favorable to the plaintiff, assuming that we have to take away the specifications as modified and to write a letter confirming the arrangement as he understood it to have been made that evening, did he do it? If you find that he did, you must find a verdict for the plaintiff. If you find that he did not, you must find a verdict for the defendant and I will leave to you the question whether he did or did not after I shall have instructed you as to the facts. He wrote a letter which you will have out with you, and that letter refers to the specifications which were agreed upon, and he says his firm will do the work according to those specifications as agreed upon. Did not the specifications as agreed upon require that the bond should be furnished ? Is it not the case that the testimony makes it perfectly clear that the plaintiff

did not furnish the bond, did not propose to furnish the bond, and did not confirm the order to furnish the bond ? Mr. Bateman said that was an immaterial point. If it was agreed by all these parties that that was an immaterial point then he is right in that view, but can you so conclude as matter of fact? The letter says, " We will agree to install the system of heating," and so forth, and that is language of futurity which I do not propose to dwell on ; it is too small a point.] [8]

[Having sent this letter, they claim that they have got the contract. It has been testified on the part of the defendant that this letter did not comprise the contract. It did not show the terms as indicated by the specifications, in this, that it failed entirely as to their agreement as to the bond. And moreover the matter could not be settled until everything should have been duly written out. And `he says further that he deemed it wise to stop the preparation of the contract and the negotiations, and that he telephoned the plaintiff on the following Tuesday that the thing must not go on until Mr. Linde should have determined whether or not it should, and that Mr. Linde was absent at the time; that they must await his return before anything was determined. If under this evidence (and I leave the question to you simply because of a few expressions which dropped from the plaintiff Bateman, one of the witnesses), you find there was a contract, you must find a verdict for plaintiff because the contract evidently was broken. The defendant took somebody else, and the plaintiff lost the job. If you find that it was not broken then you will find a verdict for the defendant.] [9]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* among others were (1, 2) rulings on evidence referred to in the opinion of the Superior Court; (3, 6-9) above instructions, quoting them.

*J. H. Brinton,* for appellant, cited as to the charge : Muckle v. Moore, 134 Pa. 608 ; Mildren v. Penna. Steel Co., 90 Pa, 317 ; Strader v. Monroe County, 202 Pa. 626 ; Ely v. Pittsburg, etc., Ry. Co., 158 Pa. 233 ; Creachen v. Carpet Co., 209 Pa. 6 ; Terrerri v. Jutte, 159 Pa. 244 ; Chapin v. Cambria Iron Co., 145 Pa. 478 ; Delaney v. Grove, 162 Pa. 138 ; Bixler v.

Lesh, 6 Pa. Superior Ct. 459; Taylor v. Sattler, 179 Pa. 451; Glone v. Arleth, 162 Pa. 550; Stafford v. Henry, 51 Pa. 514; Haight v. Conners, 149 Pa. 297; Hastings v. Eckley, 8 Pa. 194; Taylor v. Preston, 79 Pa. 436.

Cited as to the telephone communication: Wolfe v. Missouri Pac. Ry. Co., 97 Mo. 473 (11 S. W. Repr. 49); Globe Printing Co. v. Stahl, 23 Mo. App. 451; Rock Island, etc., Ry. Co. v. Potter, 36 Ill. App. 590; Miles v. Andrews, 153 Ill. 262 (38 N. E. Repr. 644); Oskamp v. Gadsden, 35 Neb. 7 (52 N. W. Repr. 718).

*Alfred N. Keim*, with him *Carroll R. Williams*, for appellees, cited as to the charge: Clements v. Bolster, 6 Pa. Superior Ct. 411.

Cited as to the telephone message: Kimbark v. Ill. Car & Equipment Co., 103 Ill. App. 632.

OPINION BY HENDERSON, J., March 14, 1905:

The plaintiffs' action is based upon an alleged breach of contract for the installation of a steam heating apparatus. The defendants desired to install a heating system, and to that end caused plans and specifications to be prepared by their engineer, upon which bids were solicited. The specifications as prepared, it was discovered, involved a greater expense than the defendants cared to incur, and one of the plaintiffs, Bateman, and one of the defendants, Walker, examined the specifications with a view to such changes as would reduce the cost. The changes made were noted on the specifications, and a copy of them as revised was taken away by the plaintiff Bateman. It was claimed by the plaintiffs that in addition to the changes noted on the specifications, the defendants agreed to leave out the general clause concerning the bond to be given as provided for in the specifications. The plaintiffs afterwards submitted a bid for the work. Other bids were also received, but the plaintiffs' was the lowest. Early in July of the same year, Mr. Bateman called at the defendants' office and went over the plans again, or, to use his own language, "over the entire work;" and changes were suggested which increased the price from $3,088 to $3,100. The plaintiffs allege that the defendants agreed upon the work and the price, and that

Bateman promised that he would write a letter confirming the order stating the terms agreed upon; that a letter of confirmation was written the next day, and that the defendants refused to permit them to proceed and complete the work, but gave the contract to another firm.

Nine of the eleven assignments of error relate to the charge of the court and two to the rejection of evidence. The complaint is that the learned judge expressed an opinion in regard to the weight of the plaintiffs' evidence; that it was not given due consideration, and that a part of the charge was delivered under a misapprehension in regard to the plaintiffs' contention as to the execution of the contract.

It is not entirely clear from the plaintiffs' evidence whether the contract alleged embraced the revised specifications presented by the defendants, or not. In answer to a question on cross-examination Mr. Bateman testified: "We generally omitted the so-called general clauses in the fore part of the specifications, those referring to the bonds, and the general descriptive matter. They were ordinarily stricken out in their entirety. We paid no attention to those at all. In other words, the specifications were merely used as a guide in order that we might include the entire apparatus."

In another part of his testimony, the same witness said: "I took a copy of those specifications with me when I left Mr. Walker; prepared the bid, wrote it and mailed it, based on those specifications as revised and changed by Mr. Walker and myself."

In the letter of confirmation written to the defendants, the plaintiffs said: "We will agree to install the system of heating, pipe work, etc., in accordance with the revised specifications of your engineer, of which we have a copy." The letter of confirmation referred to tends strongly to show that it was not in the contemplation of the parties that the conclusion reached on July 10, was the contract on which the plaintiffs were to proceed. It was evidently intended that the undertaking should be engaged in pursuant to a contract in writing. The plaintiffs proposed to be bound according to the terms of their letter of July 11, and the defendants received it with the understanding that an agreement in writing was necessary to express the understanding of the parties. The letter of

July 11 was something more than an acceptance of the contract according to the revised specifications. It contained the plaintiffs' interpretation of the requirements of the specifications, and the defendants could only be bound to that interpretation by their assent. Where one sues for damages for a breach of contract, the burden is on him to establish a clear case of something actually agreed to. Where a proposal is made on one side, and an acceptance is given on the other not according to the terms of the proposal, the parties are not bound : Slaymaker v. Irwin, 4 Wharton, 369. " To constitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is in effect a counter proposal : " Joseph v. Richardson, 2 Pa. Superior Ct. 208 ; Clements v. Bolster, 6 Pa. Superior Ct. 411. To bind the parties, an acceptance must be in exact conformity with the proposal. A qualified acceptance does not constitute a contract. The court submitted to the jury the question whether a contract had been executed by the parties, and in so doing we think the case was as favorably presented as the evidence permitted. The jury was instructed that if they found there was a contract, the verdict should be for the plaintiffs, as there was no dispute that the defendants had not performed. Even on the plaintiffs' theory, it was a material inquiry whether the defendants had waived the giving of a bond. The letter of confirmation referred to the plans and specifications. The plans and specifications required a bond. The plaintiffs allege that that provision was waived by the defendants. The jury was instructed that if the parties agreed that that provision of the specifications was immaterial, then there was no default by the plaintiffs in that respect. We find nothing in the charge which takes away from the jury the right to dispose of the case according to the evidence. The learned judge, it is true, made some comments on the mode in which the plaintiffs conducted their business, as shown by the evidence, which reflected on their business capacity ; but these comments were general in their character and did not at all limit the action of the jury. Nor did his reference to the meager character of the

plaintiffs' evidence.   The remarks of the court upon this subject were not reversible error: Halfman v. Penna. Boiler Insurance Co., 160 Pa. 202; Pool v. White, 175 Pa. 459; Jackson v. Pittsburg Times, 152 Pa. 406.

The ruling of the court on the question presented in the first assignment of error was proper.  The plaintiffs proposed to interrogate the defendant Walker on cross-examination " Were you satisfied with the understanding which you had providing the specifications were put in form without interlineations and alterations and the price inserted $3,100 ?   I mean by that would you have given the contract?"   The defendants allege that no contract was entered into; that the specifications were interlined and altered in many places, and that a new copy of the specifications as altered was to be made out as the basis for a contract.  If that were the case, it was a matter of no consequence whether the defendants would have entered into a contract or not.   An affirmative answer to the question would not have tended to show that the contract had been in fact executed.

The offer to prove a conversation over the telephone was clearly inadmissible.   The object of the evidence was to show admissions of Walker, one of the defendants.   It appeared from the testimony of the witness, that he was not acquainted with Walker's voice, and could not identify it.   No discussion is necessary to show that a declaration or admission is not admissible unless the party making it is identified as the person sought to be charged.   The introduction of the telephone has not changed the rule of evidence on that subject.   If the witness had been in the presence of the person at the other end of the line, the declarations of that person would not have been admissible without evidence that he was one of the defendants. There are numerous cases, as shown by the citations of the learned counsel for the plaintiffs, which make telephone communications competent under certain circumstances.   They relate to communications by telephone from an office in response to communications or inquiries, and to the presumption which arises from the transaction of business by telephone from the place of business of the person in whose control the telephone is.   None of them have any bearing upon the question at issue.

Taking the whole case into consideration, we are of the opin-

ion that the jury was permitted to regard all the evidence, and that the verdict is attributable to the failure of the plaintiffs to clearly establish the execution of a contract, the breach of which was the ground of complaint.

We need not consider the exception to the charge of the court on the measure of damages in view of the verdict.

The judgment is affirmed.